## STATE OF IOWA v. S. C. KIRBY, Appellant.

**Quarantine:** ENFORCEMENT OF RULES OF HEALTH. The power conferred by statute upon state and local boards of health to adopt rules and regulations for the preservation of the health of the local community must be exercised by the authorities as provided in the statute.·

**Infectious Disease:** NOTICE BY PHYSICIAN. Where no written notice is given by the physician of the existence of an infectious disease, as required by Code, section 2568, the local board of health is without authority to enforce a quarantine.

**Waiver of Notice.** A person by consenting to a quarantine may waive the notice of an infectious disease required by statute, but where the notice of quarantine is not given there can be no prosecution for disobeying the order establishing the quarantine.

*Appeal from Greene District Court.*—HON. Z. A. CHURCH, Judge.

THURSDAY, APRIL 9, 1903.

THE defendant was tried and convicted of disobeying a quarantine alleged to have been established by the local board of health. From a judgment on the verdict, he appeals.—*Reversed.*

*W. W. Turner* and *Shortley & Harpel* for appellant.

*Chas. W. Mullan*, Attorney General and *Chas. A. Van Vleck* Assistant Attorney General, for the State.

SHERWIN, J.—The local board of health of the incorporated town of Grand Junction undertook to quarantine the defendant for smallpox on the 1st day of June, 1901; and the indictment charges that he disobeyed the order of the board, and left the premises where he had been confined before the quarantine was raised, and without the consent

of the proper authorities. The sufficiency of the indict-
ment is questioned, but this we need not determine,
because of the view we take of the controlling question in
the case, namely, the legality of the quarantine.

It is unquestionably true that the preservation of the
public health is of paramount importance to the state at
large, as well as to local communities, and that the state,
in the exercise of its police powers, may con-
fer upon the state and local boards of health
whatever powers are deemed necessary for
the preservation of the general health of a community or
of the state. It may, perhaps, be conceded that, even in
the absence of express statutory authority so to do, the
authorities of a local community would have inherent or
implied power to adopt such rules and regulations as were
reasonably necessary for the preservation of the public
health of such community; but, whenever the state has
expressly conferred such power, it must be exercised as
provided in the grant. The policy of the law of this, as
well as most of the other states, has been to confer great
power upon those boards; and it may be conceded that; so
far as the exercise of those powers is concerned, a liberal
construction should be given to the rules and regulations
adopted by such board. *Wong Wai v. Williamson* (C. C.)
103 Fed. Rep. 1. "But they must not unreasonably inter-
fere with the liberty, property, and business of the
citizen." *Commonwealth v. Patch*, 97 Mass. 221. "And
whether such regulations are reasonable, impartial, and
consistent with the state policy is a question for the
court." *State v. Speyer*, 67 Vt. 502 (32 Atl. Rep. 476, 29
L. R. A. 573, 48 Am. St. Rep. 832). While the law seeks
the welfare of the greater number, and says that individ-
ual liberty and property must yield for the time being
thereto, it has prescribed the preliminary steps necessary
to deprive the citizen of these constitutional rights, and

1. QUARANTINE: enforcement of rule of health.

it is but just and in accord with settled legal principles that the courts require a strict adherence to the statute in matters of this kind.

Chapter 59 of the Acts of the Twenty-fourth General Assembly provided that, "upon written notice given by any physician that smallpox * * * exists in any place, it [shall be the duty of the mayor * * * to establish quarantine." Section 2568 of the Code says that "the quarantine authorized * * * in case of infectious or contagious diseases may be declared or terminated by the mayor * * * upon written notice given by any practicing physician of the existence of such disease." The local rules under which the board acted in this case were adopted in 1894, and we think they do require a written notice as provided by the statute; but, whether this is so or not, the statute required it when the rules were adopted, and, what is of more importance, it was required when the attempt was made to quarantine the defendant. No such written notice, however, had been given by any physician; and we think the board was, for this reason, without authority to restrain the defendant. It is not necessary for the preservation of the public health that the mayor be allowed to shut a person up in his own house, or in a pesthouse, on the mere suggestion of any one who may be unduly alarmed over appearances. Every town now has a competent physician for its health officer, and, in case of his temporary absence or inability to act, other competent physicians may easily be obtained for an examination and the written report required by the statute.

It is said, however, that the defendant consented to this quarantine. That he might have waived a formal notice thereof may be conceded, but surely it will not be contended that he could be convicted of a violation of the quarantine statute simply because he had agreed to remain secluded from his fellows

2. NOTICE by physician.

3. WAIVER of of notice.

for a given length of time.  Had he done this, he might
be guilty of a breach of contract, but nothing more.

Other matters are discussed in argument, but, as what
we have already said will dispose of the case, we do not
give them further consideration.

The judgment is REVERSED.